## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

───────────────────────────────────────────────────────────

Brett McNeal,

                          Plaintiff,

                                          Civ. No. 15-3442 (RHK/JSM)
v.                                        **MEMORANDUM OPINION
                                          AND ORDER**

University of Minnesota Physicians,

                          Defendant.

───────────────────────────────────────────────────────────

Richard A. Williams, Jr., Megan A. Spriggs, R.A. Williams Law Firm, P.A., St. Paul, Minnesota, for Plaintiff.

Samuel W. Diehl, Matthew P. Webster, Gray Plant Mooty Mooty & Bennett, PA, Minneapolis, Minnesota, for Defendant.

───────────────────────────────────────────────────────────

### INTRODUCTION

Plaintiff Brett McNeal began working for Defendant University of Minnesota Physicians ("UMP") in 2007; in 2010, he was fired. He commenced this action five years later, alleging race discrimination and retaliation in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1991 ("Title VII"), and the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.01 *et seq.* Presently before the Court is UMP's Motion to Dismiss, or in the Alternative, for Summary Judgment. For the reasons that follow, UMP's Motion will be granted in part and denied in part.

### BACKGROUND

The Complaint alleges the following facts. McNeal is an African-American male who was hired in January 2007 as UMP's Manager of Diversity and Recruitment; he later

became the Manager of Diversity and Employee Relations.  (Compl. ¶¶ 8–9, 36.)  He asserts UMP engaged in widespread and continuous racial discrimination towards him and others employed at UMP.  He claims he was called a racist (id. ¶¶ 15, 21, 28) and made the subject of false rumors (id. ¶¶ 25–26), all in a continuing effort by his coworkers and supervisors to have him discharged based on his conduct—conduct McNeal contends was done to discharge his responsibilities as "Manager of Diversity." (Id. ¶ 36.)

McNeal recounts several such instances where he experienced this behavior. Shortly after he began working at UMP, he posted a job opening for a recruiter.  (Id. ¶ 14.)  A non-minority female, who was temporarily working under McNeal's supervision, applied for the position, yet McNeal was told he was not to hire her.  (Id.) When an allegedly more-qualified white male was hired for the position, the temporary worker began telling co-workers that McNeal was a racist and would never hire a non-minority.  (Id. ¶¶ 14–15.)  McNeal notified one of his supervisors[1] about the temporary worker's statements but is unaware of any action taken in response.  (Id. ¶ 16.)

McNeal contends he was again accused of being a racist in 2007, when supervisor "Robin M." requested his input about terminating an African-American employee.  (Id. ¶ 17.)  McNeal suggested there was insufficient documentation to terminate the employee and indicated that proper documentation was important to reduce the risk of the employee filing a race-based grievance.  (Id.)  Afterwards, Robin M. complained to her supervisor,

---

[1] The Complaint references several supervisors; it is unclear, however, whether the repeated references to an *unnamed* "supervisor" are actually references to one of the *named* supervisors ("Robin M.," "Sheila H.," or "Ann P.").

"Sheila H.," that McNeal was a racist and was trying to set different standards for "Black employees." (Id. ¶ 18.) Sheila H. reported this information to UMP Senior Vice President "Ann P.," who then complained to UMP Vice President of Human Resources, Ann Eilbracht, that McNeal was a racist, not qualified for his job, and should be terminated. (Id. ¶ 19.) The accusations of racist behavior were ultimately reported to an unnamed "executive," who indicated there was no problem with McNeal. (Id. ¶ 24.)

Furthermore, throughout his employment at UMP, McNeal noticed differential treatment among applicants and employees based on race. He alleges that non-minority individuals, whom he considered less qualified than minority members, were given certain jobs, notwithstanding recommendations from McNeal and his department that they were not the best applicants based on UMP's hiring protocols. (Id. ¶ 35.) It was his opposition to this repeated conduct which he contends led to his termination in June 2010. (Id. ¶¶ 34, 36–37.) As an example, in 2008 McNeal posted an opening for a job within his department and Terry Porter, an African-American male who was employed in the department at the time, applied. (Id. ¶¶ 30–31.) Porter had a Master's Degree and was working towards a Ph.D. in Industrial Relations. (Id.) Nevertheless, McNeal claims the unnamed "Vice President" responsible for filling the position told McNeal's department that Porter would not be hired "because he did not have adequate experience." (Id. ¶ 32.) McNeal and his department felt the other applicants—including the "Caucasian female" who was ultimately hired—were not as qualified as, and in many cases less qualified than, Porter. (Id. ¶¶ 32–33.)

On June 1, 2010, McNeal was terminated from his job without explanation.  (Id. ¶ 37.)  On September 24, 2010, he filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was cross-filed with the Minnesota Department of Human Rights ("MDHR") three days later.  (Id. ¶ 39; Diehl Aff., Exs. A, B.)  The EEOC informed the MDHR and McNeal that it would initially investigated the charge.  (Diehl Aff., Exs. A, B.)  Almost five years later, the EEOC completed its investigation and on May 18, 2015, issued a determination finding no probable cause, dismissing the charge, and granting a right to sue.  (Compl. ¶ 40.)  The MDHR's right-to-sue letter was issued on June 16, 2015.  (Id. ¶ 41.)

McNeal filed this action in Hennepin County District Court on July 30, 2015, alleging race discrimination in violation of 42 U.S.C. § 1981 (Count I), Title VII (Count II), and the MHRA (Count III).  He also alleged reprisal in violation of the MHRA (Count IV) and retaliation in violation of Title VII (Count V).[2]  UMP removed the action to this Court and now moves to dismiss for failure to state a claim or, alternatively, for summary judgment.[3]  The Motion has been fully briefed, the Court heard argument on December 21, 2015, and the Motion is now ripe for disposition.

## STANDARD OF DECISION

As noted above, UMP has styled its Motion as a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56.  In support of its Motion, UMP submitted evidentiary materials beyond the pleadings (Doc. Nos. 14, 15);

[2] The Complaint incorrectly lists the Title VII retaliation claim also as Count IV.

[3] McNeal dismissed his § 1981 claim at the hearing on December 21, 2015.

McNeal responded in kind (Doc. Nos. 17, 18).  However, "Rule 12(b)(6) motions are not

automatically converted into motions for summary judgment simply because one party

submits additional matters in support of or [in] opposition to the motion."  Casazza v.

Kiser, 313 F.3d 414, 417 (8th Cir. 2002) (citation omitted).  When faced with this

situation, the Court enjoys "complete discretion" whether to exclude the material and

proceed under Rule 12, or consider it and proceed under Rule 56.  Stahl v. U.S. Dep't of

Agric., 327 F.3d 697, 701 (8th Cir. 2003); accord Fed. R. Civ. P. 12(d).  In the Court's

view, this matter is not yet ripe for summary-judgment consideration as inadequate

discovery has taken place at this early stage of the proceeding.  See Hester v. Redwood

Cty., 885 F. Supp. 2d 934, 942 (D. Minn. 2012) (Montgomery, J.) ("As a general rule,

summary judgment under Rule 56 is proper only after the nonmovant has had adequate

time for discovery.").  As such, the Court will address UMP's Motion under

Rule 12(b)(6).

　　　To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead

"enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 547 (2007).  "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant

has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

The Court "must accept [the] plaintiff's specific factual allegations as true but [need]

not . . . accept a plaintiff's legal conclusions."  Brown v. Medtronic, Inc., 628 F.3d 451,

459 (8th Cir. 2010) (citation omitted).  The Complaint must be construed liberally, and

any allegations or reasonable inferences arising therefrom must be interpreted in the light

most favorable to Plaintiff. [4]  Twombly, 550 U.S. at 554–56.

## ANALYSIS

I.      **Beaulieu requires dismissal of McNeal's MHRA claims.**

UMP first argues that McNeal's MHRA claims (Counts III and IV) should be

dismissed because it has been prejudiced by the nearly 5-year delay between when

McNeal filed his charge and the MDHR issued its determination.  The MHRA provides,

in relevant part, that "the commissioner [of the MDHR] *shall* make a determination

within 12 months after the charge was filed as to whether there is probable cause to credit

the allegation of [discrimination]."  Minn. Stat. § 363A.28, subd. 6(b) (emphasis added).

The Minnesota Supreme Court later determined that the mandatory word "shall" was

intended by the legislature to set a "strict time frame [of 12 months] within which the

MDHR must make a probable cause determination."  State by Beaulieu v. RSJ, Inc., 552

N.W.2d 695, 702 (Minn. 1996).  The court also held that respondents would likely be

prejudiced by determinations made more than 12 months after a charge was filed and, in

such an instance, respondents should be permitted to seek appropriate relief, including

dismissal of the claims.  Id. at 702–03.  Nonetheless, the court also created a bright-line

rule "that probable cause determinations made 31 or more months after a charge is filed

---

[4] Public records, such as an EEOC charge and notice of dismissal, may be considered under Rule 12(b)(6).  Blakely v. Schlumberger Tech. Corp., 648 F.3d 921, 931 (8th Cir. 2011); Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999); McKenzie v. Rider Bennett, LLP, Civ. No. 05-1265, 2006 WL 839498, at *4 n.1 (D. Minn. Mar. 28, 2006) (Ericksen, J.) (MDHR's notice of dismissal properly considered under Rule 12(b)(6)).

are per se prejudicial to the respondent and require dismissal of the complaint" as a

matter of law.  Id. at 703.

Here, it is undisputed the MDHR issued its determination on June 16, 2015,

*57 months* after McNeal's charge was cross-filed with it.  (Compl. ¶¶ 6, 41.)  UMP

contends this delay is "per se prejudicial" because it far exceeds the 31-month bright-line

rule set in Beaulieu.  The Court agrees.  The MDHR's 57-month delay clearly

transgresses this line and McNeal's MHRA claims for discrimination and reprisal must

be dismissed.  552 N.W.2d at 702–03; see also Powers-Potter v. Nash Finch Co., Civ.

No. 14-339, 2014 WL 2003063, at *1 (D. Minn. May 14, 2014) (Schiltz, J.).

While at first blush this may appear a harsh result, McNeal had some

responsibility to act to ameliorate it.  See Beaulieu, 552 N.W.2d at 702 n.7 ("[T]he

charging party has the ability, and to some extent the responsibility, to do what it can to

minimize the impact of the MDHR's inaction."); see also Hukkanen v. Int'l Union of

Operating Eng'rs, Hoisting & Portable Local No. 101, 3 F.3d 281, 286 (8th Cir. 1993)

("Plaintiffs have some obligation to monitor the progress of their charges with the EEOC

and do not have an absolute right to wait until the EEOC proceedings conclude."); Minn.

Stat. § 363A.33, subds. 1(3), 3 (allowing charging party to bring civil action 45 days after

filing a charge and effectively withdraw it from the MDHR).  Moreover, McNeal was

forewarned of the agencies' impending delay—the EEOC informed him, one month after

he filed his charge, that "it often takes more than one year to complete the investigation

of a charge of discrimination" and reminded him that he could request a right-to-sue letter

at any time.  (See Diehl Aff. Ex. C.)  Because McNeal and his attorney (the same

attorney who currently represents him) were informed that the EEOC would be investigating his claim instead of the MDHR, they were on notice that the MDHR's determination would be similarly delayed.  (See id. Exs. A, B.)  In fact, the MDHR did wait to issue its determination until *after* the EEOC completed its investigation.  (Compl. ¶¶ 40–41.)  Thus, the MDHR's inaction, coupled with McNeal's own inaction in not withdrawing his charge or requesting a right-to-sue letter, makes the dismissal of these claims appropriate.

McNeal offers two arguments in response.  First, he relies upon Acker v. Environmental Resources Management, Inc., 93 F. Supp. 3d 1060, 1064 (D. Minn. 2015) (Nelson, J.), to argue Beaulieu does not apply when an *employee* brings a civil action because Beaulieu involved a charge prosecuted by the *MDHR*.[5]  Acker concluded the plaintiff-employee should not be responsible for the MDHR's delay because the agency "had some control over its own failure to make a timely determination."  Id. at 1064 (quoting Montgomery v. Indep. Sch. Dist. No. 709, 109 F. Supp. 2d 1081, 1101 (D. Minn. 2000) (Tunheim, J.)).  However, the undersigned does not find Acker persuasive.  It should not matter who brings suit because a claimant also controls his own destiny in these situations; he can seek to withdraw his charge and independently prosecute his claim at any point.  See Beaulieu, 552 N.W.2d at 702 n.7; Hukkanen, 3 F.3d at 286; Minn. Stat. § 363A.33, subds. 1(3), 3.

---

[5] McNeal also relies on  Chavira v. Crown Cork & Seal USA, Inc., Civ. No. 13-1734, 2015 WL 4920094 (D. Minn. Aug. 18, 2015) (Davis, J.), appeal docketed No. 15-3079 (8th Cir. Sept. 18, 2015), but Chavira simply adopted Acker's reasoning.

8

McNeal also argues he took no action because doing so would have prejudiced the EEOC's investigation into UMP's systemic, discriminatory employment practices. (Mem. in Opp'n at 10.)  This argument, however, is both legally and factually irrelevant. McNeal does not cite, and the Court is not aware of, any authority which *precludes* an employee from withdrawing his charge and pursuing a lawsuit himself when the investigation concerns claims of systemic discrimination.  Furthermore, Beaulieu confirmed that the MDHR is independently obligated to meet its own statutory deadlines, regardless of what the EEOC does:

> Unlike the similar provision of Title VII, . . . which provides that the EEOC 'shall make its determination on reasonable cause *as promptly as possible and, so far as practicable,* not later than one hundred and twenty days from the filing of the charge,' [the MHRA] contains language setting a strict time frame within which the MDHR must make a probable cause determination.

Beaulieu, 552 N.W.2d at 702 (emphasis in original).  Because the MDHR is responsible for making its own timely determination, it does not matter that the EEOC's investigation was still ongoing between September 2010 and May 2015.  (See Mem. in Opp'n at 12–15, 18.)  Nor does it matter how complete or thorough the EEOC's investigation was or that its delay was "eminently reasonable."  (Id. at 15.)  McNeal has not provided any compelling reason why Beaulieu should not apply here.  Accordingly, both of his MHRA claims will be dismissed.

**II.     Laches is not properly decided on a motion to dismiss.**

In addition to arguing Beaulieu bars the MHRA claims, UMP argues *all* of McNeal's claims should be dismissed because it has been prejudiced by his substantial

delay in bringing suit.[6]  The doctrine of laches provides an affirmative defense that may bar a claim "when the plaintiff is guilty of (1) unreasonable and unexcused delay, (2) resulting in prejudice to the defendant."  Whitfield v. Anheuser-Busch, Inc., 820 F.2d 243, 244 (8th Cir. 1987) (citation omitted).  Whether the doctrine applies is within the sound discretion of the court and depends on the specific facts of the case; the defendant generally bears the burden of persuasion on this issue.  Id. at 244–45 (citing EEOC v. Liberty Loan Corp., 584 F.2d 853, 856 (8th Cir. 1978)).

The crux of UMP's argument is that most of the material witnesses—including those who investigated McNeal's conduct and those who eventually decided to terminate his employment—are unavailable, deceased, or unknown.  (Def. Mem. at 5–6, 12.)  UMP contends its inability to easily access these witnesses is prejudicial because it will be unable to defend itself at trial.  While the unavailability of witnesses can support a finding of prejudice, Whitfield, 820 F.2d at 245, "a defendant must establish with such clarity as to leave no room for controversy that it has been substantially and unduly prejudiced in its ability to defend the lawsuit" in order for laches to apply.  EEOC v. Westinghouse Elec. Corp., 592 F.2d 484, 486 (8th Cir. 1979) (internal quotations and citations omitted).  UMP has not done so here.  McNeal notes that the EEOC's investigation file is "replete" with statements from the material witnesses.  Moreover, he correctly points out that the delay itself did not cause the unavailability of certain witnesses: several became unavailable within one year of the charge being filed.  (Mem.

---

[6] With McNeal's § 1981 and MHRA claims now dismissed, the only claims remaining in this action arise under Title VII.

in Opp'n at 18–20; see also Def. Mem. at 5.)  And, notably, the record does not clearly

indicate whether either party knows the locations of and contact information for these

witnesses or whether either has actually attempted to locate and interview them.  (See

Def. Reply at 6 n.4.)

   "Because a court asked to apply laches must determine the reasonableness of . . .

the delay in filing suit, as well as the resulting prejudice suffered by the defendant, laches

generally cannot be decided" on a motion to dismiss.  Axcan Scandipharm Inc. v. Ethex

Corp., 585 F. Supp. 2d 1067, 1081 (D. Minn. 2007) (Kyle, J.).  That is true here.  As

such, the Court will deny this portion of UMP's Motion.

### III.    McNeal has pleaded sufficient facts to survive a motion to dismiss.

   UMP also argues McNeal failed to allege facts to support a prima facie case of

retaliation under Title VII.[7]  (Def. Mem. at 14–16.)  Specifically, it contends the

Complaint is insufficient under Twombly and Iqbal because McNeal simply recited the

elements of such a claim and alleged no facts which would constitute a protected activity

or causal relationship, two necessary elements of a prima facie case of retaliation under

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  (Id. at 15 (citing Barker v.

Mo. Dept. of Corr., 513 F.3d 831, 834–35 (8th Cir. 2008)).)

   However, "a plaintiff need not plead facts establishing a prima facie case . . .

under McDonnell Douglas in order to defeat a motion to dismiss."  Hager v. Ark. Dept.

of Health, 735 F.3d 1009, 1014 (8th Cir. 2013) (citing Swierkiewicz v. Sorema N.A.,

---

[7] UMP also argues McNeal failed to plead sufficient facts to support a claim of reprisal under the MHRA.  However, the Court has already dismissed this claim.  (See supra Section I.)

534 U.S. 506, 510–11 (2002)).  A plaintiff, even one alleging discrimination, need only meet the pleading standard under Federal Rule of Civil Procedure 8: "a short and plain statement of the claim showing that the pleader is entitled to relief," providing the defendant fair notice of the claim.  Fed. R. Civ. P. 8(a)(2); see also Twombly, 550 U.S. at 569–70; Swierkiewicz, 534 U.S. at 512.[8]  In Swierkiewicz, for example, the complaint alleging age and nationality discrimination "easily" passed Rule 8 muster and gave fair notice of plaintiff's claims.  534 U.S. at 514.  It detailed the events leading to his termination, provided relevant dates, and included "the ages and nationalities of at least some of the relevant persons involved."  Id.  Similarly here, McNeal's complaint contains adequate detail to support his retaliation claim and give UMP fair notice.  He pleaded that less-qualified people were hired based solely on their race, that he opposed UMP's allegedly racially-discriminatory hiring practices by "taking steps to fulfill his responsibilities as Manager of Diversity and Recruitment and as Manager of Diversity and Employee Relations," and was terminated as a result of his continued opposition.  (Compl. ¶¶ 9–15, 17, 23, 28, 31–33, 35, 36–37.)  In the Court's view, therefore, he has sufficiently stated a claim that, if supported by evidence, would entitle him to the requested relief.  See Twombly, 550 U.S. at 556.  Accordingly, UMP's Motion to dismiss the retaliation claim will be denied.

---

[8] While Swierkiewicz pre-dates Twombly and Iqbal, the latter did not abrogate the former. Indeed, Twombly and Iqbal simply reiterated that a complaint need only allege enough facts sufficient to state a claim that is "plausible on its face" and that specific facts need not be alleged.  See Twombly, 550 U.S. at 569–70 (discussing Swierkiewicz's *compatibility* with the "plausible" standard); see also Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (applying Rule 8(a)(2)).

**IV.     McNeal properly pleaded pre-charge events in his Complaint.**

UMP also contends McNeal lacks standing to allege discriminatory actions taken by UMP against others from 2007 and 2008.  UMP asks the Court to dismiss McNeal's claims to the extent he is asserting civil-rights violations on behalf of those individuals. McNeal responds that this is not what he is doing; instead, he relies on the alleged discriminatory actions experienced by others as background preceding his own termination.  (Mem. in Opp'n at 23).  It was appropriate for him to include these facts in his Complaint.  Nat'l R.R. Corp. v. Morgan, 536 U.S. 101, 103 (2002) (Title VII does not "bar an employee from using the [employer's] prior acts as background evidence to support a timely claim").

Furthermore, UMP argues that discriminatory actions allegedly taken against McNeal before September 24, 2009, are time-barred and asks that his claims be dismissed to this extent.  (Def. Reply at 15.)  McNeal responds, again, that he is not asserting these events as individual violations.  (Mem. in Opp'n at 23.)  Rather, his argument is that these facts are background to support his claims.  This, too, is proper. United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977) ("A discriminatory act which is not made the basis for a timely charge . . . may constitute relevant background evidence.").  Therefore, UMP's Motion will be denied in this respect.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that UMP's Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. No. 12) is **GRANTED IN PART** and **DENIED IN PART**.

Specifically, the Motion is **GRANTED** as to Count I (the § 1981 claim) and Counts III

and IV (the MHRA claims), and those claims are **DISMISSED WITH PREJUDICE**.

The Motion is **DENIED** as to Counts II and V (the Title VII claims).


Date: January 28, 2016                                          s/Richard H. Kyle
                                                                RICHARD H. KYLE
                                                                United States District Judge